David A. SCHOLL, Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. 00–737C.

United States Court of Federal Claims.

June 23, 2004.

Cletus P. Lyman, Lyman & Ash, Philadelphia, Pennsylvania, attorney of record. With him on the briefs was Michael S. Fettner, Lyman & Ash.

Todd M. Hughes, Assistant Director, Commercial Litigation Branch, Department of Justice, Washington, D.C., attorney of record. With him on the briefs were David M. Cohen, Director, and Robert D. McCallum, Jr., Assistant Attorney General.

Tahmineh I. Maloney, law clerk.

## OPINION

BASKIR, Judge.

On May 27, 2003, the Defendant filed a renewed Motion to Dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). In its motion, the Defendant argues that the enactment of the Civil Service Reform Act of 1978, Pub.L. 95–454, 92 Stat. 1111 (CSRA), eliminated this Court's authority to hear a back pay claim from the Plaintiff, Bankruptcy Judge David Scholl, an officer of the Judicial Branch. Following the filing of the second motion to dismiss by the Government, we held a hearing and directed the parties to address a number of issues raised by that motion. **Because we find that the CSRA does not foreclose judicial review of Judge Scholl's claims we deny Defendant's renewed Motion to Dismiss.**

### Introduction

In reaching a decision on Defendant's motion, we must accept the Plaintiff's allegations as true and draw all reasonable inferences in Plaintiff's favor. *See, e.g., Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236–7, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). A motion to dismiss for lack of subject matter jurisdiction may be filed at any time. *See* RCFC 12(h)(3); *George W. Kane, Inc. v. United States,* 26 Cl.Ct. 655, 658 (1992). But the Defendant's renewed motion came as a surprise as it was the second motion to dismiss filed by the Defendant in this action. We rejected Defendant's first motion to dismiss for failure to state a claim upon which relief could be granted in our opinion of December 4, 2002. *See Scholl v. United States,* 54 Fed.Cl. 640 (2002). We concluded that the Court has jurisdiction over the Plaintiff's back pay claim. *Id.* at 643–45.

Judge Scholl contends he was improperly denied his mandatory reappointment to a second 14-year term as a bankruptcy judge, in violation of statutory and regulatory provisions governing reappointment. He also challenges the validity of the procedures used in determining his reappointment, a somewhat more problematic claim which the parties and the Court have yet to address.

*Discussion*

Our earlier opinion discussed jurisdiction at length, but for the convenience of the reader we briefly revisit that subject. *See also Scholl,* 54 Fed.Cl. at 643–45. As a court of limited jurisdiction, this Court may only hear claims brought against the Government to the extent that Congress has waived sovereign immunity. *See, e.g., United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The Tucker Act, this Court's primary jurisdictional statute, states that a suit may be brought if it is:

> founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). Because the Tucker Act standing alone does not create a substantive right of recovery for money damages a plaintiff must also demonstrate a separate, substantive right pursuant to a money mandating provision. *See, e.g., United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The party asserting jurisdiction bears the burden of proof. *See Rohmann v. United States,* 25 Cl.Ct. 274, 277 (1992).

Historically, this Court's Tucker Act jurisdiction extended to Federal civilian pay claims because salary specifying statutes are considered money mandating provisions. *See United States v. Fausto,* 484 U.S. 439, 453–54, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); *United States v. Wickersham,* 201 U.S. 390, 400, 26 S.Ct. 469, 50 L.Ed. 798 (1906). Plaintiff's monetary claim seeks his salary, both retroactively and prospectively. The statute providing compensation for bankruptcy

judges, 28 U.S.C. § 153, acts as the necessary money mandating provision and meets the "Act of Congress" prong of the Tucker Act. The Back Pay Act, 5 U.S.C. § 5596, affords this Court with the authority to award back pay for the period prior to the date of judgment. While we may not award pay for future years, a plaintiff may file successive back pay claims.

In our earlier opinion, we held that the then applicable statutes and regulations governing the appointment and reappointment of bankruptcy judges gave Judge Scholl an absolute right to reappointment, subject to a condition subsequent—that he had "failed to perform the duties of a bankruptcy judge according to the high standards of performance regularly met by United States bankruptcy judges." *Scholl,* 54 Fed.Cl. at 644–51. We thus rejected the Government's thesis that *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), barred this action. *Id.*

In its new motion, the Government argues that the enactment of the CSRA eliminated this Court's authority to hear Judge Scholl's back pay claim. Def.'s Brief (May 27, 2003) at 4–5. The CRSA covers the civil service, which includes judicial appointees such as Judge Scholl. *See* 5 U.S.C. § 2101. The Defendant's position relies upon the Supreme Court's decision in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). The Government argues that *Fausto's* holding extends to personnel of the Judicial Branch just as it does to personnel of the Executive Branch.

We are not prepared to accept so sweeping a proposition without seeing whether the analysis the Supreme Court applied leads to the same conclusion as respects Judicial Branch personnel. *Fausto* held that the CSRA precluded Mr. Fausto, a nonpreference employee in the excepted service, from seeking judicial review for an adverse personnel decision. *Id.* The issue presented by *Fausto* for our case is whether the CSRA established so comprehensive a scheme for the review of adverse personnel actions for judicial officers, such as Judge Scholl, as to preclude jurisdiction in this Court under the statute providing compensation for bankrupt-

cy judges, 28 U.S.C. § 153, and the Back Pay Act, 5 U.S.C. § 5596.

The Supreme Court in *Fausto* had to determine whether the absence of a .judicial review provision for nonpreference eligible employees in the excepted service reflected a deliberate legislative decision to preclude review, or whether its silence left in place prior review rights. The Court examined "the purpose of the CSRA, the entirety of its text, and the structure of review that it established." *Fausto*, 484 U.S. at 444, 108 S.Ct. 668.   .

Quite obviously this analysis and the resulting conclusion as respects nonpreference eligible employees in the excepted service tells us nothing directly about the CSRA's application to Judicial Branch personnel in general or Article I judicial officers in particular. To answer that question we must apply the same methodology the Court employed in *Fausto*. We also look to the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549, a statute enacted close in time to the CSRA and specifically dealing with bankruptcy judges. We conclude that the CSRA did not divest judicial review of Judge Scholl's action. We discern no legislative intent in the Act to cover adverse personnel actions such as his.

The Supreme Court described the CSRA, its purpose, and its historical and legal contexts. Enacted in 1978, the CSRA "comprehensively overhauled the civil service system." *Lindahl v. OPM*, 470 U.S. 768, 773, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). It replaced the "outdated patchwork of statutes and rules built up over almost a century" that was the civil service. *Fausto*, 484 U.S. at 444, 108 S.Ct. 668, citing S.Rep. No. 95–969, p. 3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2725. Under the pre-existing system only veterans enjoyed a statutory right to appeal adverse personnel actions; other employees were either denied the right to an appeal or had the right by Executive Order. *Id.* "Appeals processes [were] so lengthy and complicated that managers [in the civil service] often avoid[ed] taking disciplinary action" against employees even when clearly warranted. *Id.* at 445, 108 S.Ct. 668, citing S.Rep. No. 95–969, at 9,

U.S.Code Cong. & Admin.News 1978, pp. 2723, 2731.

Judicial review of adverse personnel actions varied as well. Because there was no special statutory review proceeding relevant to personnel action, employees resorted to a variety of judicial theories, including suits for mandamus and injunction. *Fausto*, 484 U.S. at 444, 108 S.Ct. 668. On many matters concurrent jurisdiction existed between the district courts and the Court of Claims. *Id.* at 445, 108 S.Ct. 668. Dissatisfaction existed with the "wide variations in the kinds of decisions...issued on the same or similar matters." *Id.*, citing S.Rep. No. 95–969, at 63, U.S.Code Cong. & Admin.News 1978, pp. 2723, 2785.

But the civil service system was not alone in receiving Congress' attention in 1978. After almost ten years of study and investigation, Congress undertook a significant revision of the bankruptcy laws. *See generally Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (discussing the bankruptcy system both prior to and subsequent to the revisions). Making its way through Congress at approximately the same time as the CSRA, the Bankruptcy Reform Act of 1978 created the current bankruptcy court system. It was enacted on November 6, 1978, twenty-four days after the enactment of the CSRA on October 13, 1978, and became effective on October 1, 1979. The Bankruptcy Reform Act's broad grant of judicial power was later found in violation of Article III of the Constitution. *See Northern Pipeline Construction Co.*, 458 U.S. at 57–87, 102 S.Ct. 2858. We look to the Bankruptcy Reform Act because its provisions dealt more specifically with bankruptcy judges. It offers illumination on the question of whether Congress intended to foreclose Judge Scholl's right to judicial review through its enactment of the CSRA.

First we consider the text of the CSRA. In order to find that Judge Scholl's right to judicial review was divested by the CSRA we must find that the CSRA created a comprehensive system of review for adverse personnel actions involving judicial officers. In *Fausto*, the Court found that in each of the

three main sections of the CSRA that govern personnel action taken against members of the civil service Congress dealt "explicitly" with the situation of employees of Mr. Fausto's status, nonpreference members of the excepted service, "granting them limited, and in some cases conditional rights." *Fausto,* 484 U.S. at 445, 108 S.Ct. 668.

The Defendant concedes that employees of the Judicial Branch, including Judge Scholl, while part of the civil service, are not covered by the adverse personnel action provisions of the CSRA. Def.'s Brief (Jan. 20, 2004) at 3–4. Several provisions of the CSRA support this point. *See* 5 U.S.C. §§ 2302(a)(2)(C), 4301(1) (definition of "agency" does not include courts); *id.* at §§ 7501, 7511(a) (definition of "employee" does not encompass excepted service employees such as court employees); *see also Hartman v. MSPB,* 77 F.3d 1378, 1379–80 (Fed.Cir.1996) (district court deputy clerk not an "employee" as defined in 5 U.S.C. § 7511(a)(1)). In contrast, Mr. Fausto was an employee of an agency within the meaning of the CSRA. *See* 5 U.S.C. §§ 2302(a)(2)(C), 4301(1)(A).

The Bankruptcy Reform Act did not amend the CSRA to include bankruptcy judges in any comprehensive and integrated scheme for review of personnel matters, such as that discussed by the Court in *Fausto.* The five sections of the CSRA that were amended by the Bankruptcy Reform Act of 1978 each had to do with financial matters. Three of the amended sections related to annuities: 5 U.S.C. §§ 8339, 8341, and 8344(a)(A). The other two related to civil service retirement, 5 U.S.C. §§ 8331, 8334(c). The term "bankruptcy judges" was inserted into 5 U.S.C. § 8331, the definitional section for purposes of civil service retirement. The other section, 5 U.S.C. § 8334(c), related to deductions, contributions, and deposits required to be withheld from the pay of an employee for credit to the civil service retirement fund. At most we could find the acts intersected to the extent that the Bankruptcy Reform Act amended the CSRA only to include bankruptcy judges in its annuity and retirement coverage.

The Defendant's inability to prove that judicial officers fall within the comprehensive scheme governing personnel actions contained within the CSRA is fatal to its argument. Judge Scholl does not have the right, under the CSRA, to appeal his non-appointment to the Merit Systems Protection Board (Board). As a bankruptcy judge, he does not fall within the categories of employees covered by the adverse personnel actions of the CSRA, nor is his claim of the sort the Board has subject matter jurisdiction over. The Federal Circuit has interpreted *Fausto* only to preclude this Court from exercising jurisdiction under the Back Pay Act where the CSRA "gave the Board jurisdiction over a claim involving a specified subject matter or category of employee." *Read v. United States,* 254 F.3d 1064, 1067 (Fed.Cir.2001); *see also Worthington v. United States,* 168 F.3d 24, 25 (Fed.Cir.1999). Neither of these disqualifications is present as respects Judge Scholl's situation.

A statutory scheme separate from the CSRA governs the appointment, reappointment, and removal of bankruptcy judges. The Bankruptcy Reform Act of 1978 created a system of bankruptcy courts and judges. It also governed the removal of those judges, inserting 28 U.S.C. § 153, which reads in relevant part "(b) [r]emoval of a bankruptcy judge during the term for which he is appointed shall be only for incompetency, misconduct, neglect of duty, or physical or mental disability."

In light of this structure we cannot glean from the CSRA the congressional intent to deny bankruptcy judges the judicial remedies in adverse personnel matters they would have had before the enactment of the CSRA. In reaching this decision, we adhere to a well-established principle of statutory construction—that for laws that prohibit certain actions, additional prohibitions should not be implied absent specific legislative intent. *See Bosco v. United States,* 976 F.2d 710, 713 n. 7 (Fed.Cir.1992). We properly look to the more particularized statute governing bankruptcy judges in reaching our conclusion.

Our review of the Bankruptcy Reform Act and the CSRA illustrates that bankruptcy judges were, and are, subject to a separate statutory and administrative scheme for reappointment and removal. Because we

find that the CSRA was not meant to foreclose judicial review of Judge Scholl's claims—the thesis of the second Government motion to dismiss—we do not repeat our previous discussion of later legislative enactments dealing with bankruptcy judges. *See Scholl,* 54 Fed.Cl. 640.

*Conclusion*

The enactment of the CSRA did not foreclose Judge Scholl's right to bring this action. We thus deny the Defendant's renewed Motion to Dismiss. The parties are to submit a Joint Status Report no later than July 22, 2004, proposing a schedule for further proceedings in this matter, particularly discovery.

IT IS SO ORDERED.