# United States Court of Appeals for the Federal Circuit

Miscellaneous No.806

IN RE UNITED STATES,

Petitioner.

Gregory G. Katsas, Deputy Assistant Attorney General, Civil Division, United States Department of Justice, of Washington, DC, argued for petitioner. With him on the brief were Peter D. Keisler, Assistant Attorney General, Sharon Swingle, and Robert M. Loeb, Attorneys, Appellate Staff.

Cletus P. Lyman, Lyman & Ash, of Philadelphia, Pennsylvania, argued for respondent.

On Petition for a Writ of Mandamus to the United States Court of Federal Claims

Judge Lawrence M. Baskir

# United States Court of Appeals for the Federal Circuit

Miscellaneous No. 806

IN RE UNITED STATES,

Petitioner.

———————————

DECIDED:  September 11, 2006

———————————

Before SCHALL, GAJARSA, and PROST, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

The United States petitions for a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a).[1]  In its petition, the government challenges various rulings of the United States Court of Federal Claims in the case of <u>Scholl v. United States</u>, No. 00-737C (Fed. Cl.).  All proceedings in the Court of Federal Claims have been stayed pending our consideration of the petition.

This case involves a suit, purportedly under the Tucker Act, 28 U.S.C. § 1491(a)(1), by David A. Scholl, a former bankruptcy judge of the United States District Court for the Eastern District of Pennsylvania.  In his suit, Mr. Scholl alleges that the denial of his reappointment as a bankruptcy judge by the United States Court of

---

[1]  Section 1651(a) provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

Appeals for the Third Circuit was in violation of his right to due process under the Fifth Amendment to the Constitution and certain regulations relating to the reappointment of bankruptcy judges that have been promulgated by the Judicial Conference of the United States.

Because the Court of Federal Claims should not have exercised jurisdiction over Mr. Scholl's suit and because the requirements for the writ of mandamus are met, we grant the government's petition for a writ of mandamus and direct the court to dismiss Mr. Scholl's complaint.

BACKGROUND

I.

In each federal judicial district, the bankruptcy judges in regular active service "constitute a unit of the district court . . . known as the bankruptcy court for that district." 28 U.S.C. § 151. In each district, bankruptcy judges are appointed by a majority of the active judges of the circuit court of appeals in which the district is located. Id. § 152(a)(1). Each appointment is for a term of fourteen years. Id. Section 303 of the Federal Court's Improvement Act of 1996, Pub. L. No. 104-317, § 303, 110 Stat. 3852 (1996), codified as a note to section 152, provides that "[w]hen filling vacancies, the court of appeals may consider reappointing incumbent bankruptcy judges under procedures prescribed by regulations issued by the Judicial Conference of the United States." The Judicial Conference of the United States (the "Judicial Conference") "is the statutorily created body of federal judges that establishes policy for the administration of the Judicial Branch." Williams v. United States, 240 F.3d 1019, 1061 n.24 (Fed. Cir. 2001) (citing 28 U.S.C. § 331). The Judicial Conference is composed of the Chief

Justice of the United States, "the chief judge of each judicial circuit, the chief judge of the Court of International Trade, and a district judge from each judicial circuit." 28 U.S.C. § 331. The Third Circuit generally follows the Judicial Conference regulations, although it has never formally adopted them.

In 2000, the year in which Mr. Scholl was denied reappointment, sections 5.01(b) and (c) of Chapter 5 of the Judicial Conference regulations provided:

> (b) The court of appeals will decide whether or not to reappoint the incumbent judge. In making this decision, the court of appeals shall take into consideration the professional and career status of the incumbent. Reappointment should not be denied unless the incumbent has failed to perform the duties of a bankruptcy judge according to the high standards of performance regularly met by United States bankruptcy judges.

> (c) If the court of appeals determines by majority vote of the active judges of that court that the incumbent bankruptcy judge appears to merit reappointment, the court shall follow the procedures set forth in following sections 5.02 and 5.03.

Section 5.02 of the regulations provided that, if the court of appeals determined that an incumbent bankruptcy judge who was willing to be reappointed appeared to merit reappointment, the circuit executive of the court would cause to be published a public notice stating that the court was considering the judge for reappointment and inviting comments from members of the bar and the public. Section 5.03 of the regulations dealt with the process by which the court of appeals would decide on the reappointment after comments from the bar and public were reviewed.[2]

---

[2]    In 2001, the Judicial Conference amended section 5.01(b) of Chapter 5 of the regulation by deleting the sentence that began: "Reappointment should not be denied unless." This amendment was made in order to avoid the creation of a presumption of reappointment. See Report of the Proceedings of the Judicial Conference of the United States, March 14, 2001, available at

## II.

On August 27, 1986, Mr. Scholl was appointed to the Bankruptcy Court for the Eastern District of Pennsylvania by the Court of Appeals for the Third Circuit. His fourteen-year term of appointment ended on August 26, 2000. In a letter addressed to the Chief Judge of the Third Circuit, dated December 29, 1999, Mr. Scholl expressed his "willingness to accept reappointment." A preliminary vote of the active judges of the Third Circuit was held, and Mr. Scholl received enough votes to have his reappointment proceed through the public notice and comment process. The process involved notices in local newspapers seeking comments on the proposed reappointment, as well as 1,165 questionnaires sent to attorneys and bankruptcy trustees who had appeared before Mr. Scholl during his tenure as a judge. Approximately 300 of the questionnaires were returned to the court of appeals. Mr. Scholl was provided with copies of all comments and a detailed chart analyzing the responses to the questionnaires, to which he submitted a detailed response. Upon reviewing the comments, responses to the questionnaires, and Mr. Scholl's response, the active judges of the Third Circuit voted 11-to-1 against reappointment of Mr. Scholl. In a May 25, 2000 letter, Mr. Scholl was informed of the adverse vote, and was told that the process to appoint a replacement was being initiated. Mr. Scholl served as a bankruptcy judge until his term ended on August 26, 2000.

---

(Cont'd. . . .)

http://www.uscourts.gov/judconf/01-mar.pdf. The Judicial Conference also amended the regulations to eliminate the requirement in section 5.01(c) that the court of appeals take an initial vote to determine whether the incumbent appeared to merit reappointment, thereby providing that the court of appeals could proceed directly to the public comment period. Id.

III.

After the expiration of his term, Mr. Scholl brought the present action in the Court of Federal Claims, purportedly under the Tucker Act. In Count I of his complaint, he alleges, that as a bankruptcy judge, he had a "property interest in continued employment that was taken in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution." Compl. ¶ 19. In Count II of his complaint, he alleges that the failure to reappoint him was in violation of the Judicial Conference regulations. Id. ¶ 37. Mr. Scholl asserts that 28 U.S.C. § 153(a), the pay statute for bankruptcy judges, and the Judicial Conference regulations support Tucker Act Jurisdiction in the Court of Federal Claims.

In due course, the government moved, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims, to have Mr. Scholl's suit dismissed for lack of jurisdiction.[3] The government argued that the case should be dismissed for lack of subject matter jurisdiction under the Tucker Act because Mr. Scholl did not have a firm right to reappointment under a money mandating statute, regulation of an executive department, or Constitutional provision. The court rejected this contention in Scholl I, 54 Fed. Cl. at 643-44, 650. The court ruled that under the applicable Judicial Conference regulations, "Judge Scholl had a firm right to be reappointed as a [bankruptcy] judge, absent the showing that he had failed to perform according to high standards." The government made a renewed motion to dismiss for lack of subject

---

[3] The government also moved to have Mr. Scholl's suit dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). Scholl v. United States, 54 Fed. Cl. 640, 643 (2002) ("Scholl I").

matter jurisdiction, which was denied in <u>Scholl v. United States</u>, 61 Fed. Cl. 322 (2004) ("<u>Scholl II</u>").

Four months later, the government filed a "Motion to Certify Interlocutory Appeal and to Stay Further Proceedings." In its motion, the government argued that whether Mr. Scholl states a claim when he seeks back pay for not being reappointed and whether the Court of Federal Claims possesses jurisdiction to review the Third Circuit's decision not to reappoint him are controlling questions of law, and that if the decision of the trial court is reversed with respect to either issue, dismissal of the suit would result. Interlocutory Appeal Mot. at 3-4, 9-11. The government further argued that whether a "firm right" to reappointment exists is an issue of first impression upon which there are substantial grounds for a difference of opinion. <u>Id.</u> at 6-8. Finally, the government asserted that the trial court should grant a discretionary stay because "discovery in this case likely would involve a sensitive and potentially burdensome inquiry into the basis for the decision of the Third Circuit judges . . . ." <u>Id.</u> at 11-12.

The Court of Federal Claims determined that the government's motion was untimely and that, in any event, the government had failed to satisfy the requirements for an interlocutory appeal. Consequently, the court denied certification for interlocutory appeal in <u>Scholl v. United States</u>, 68 Fed. Cl. 58 (2005) ("<u>Scholl III</u>"). Mr. Scholl then moved to compel the government's answer to an interrogatory seeking the name and nature of the testimony of each witness that the government intended to call at trial. The government's response opposed Mr. Scholl's motion to compel and also presented a "Renewed Motion for Certification of an Interlocutory Appeal."

In its response, the government stated that "[i]f Mr. Scholl intends to challenge the merits of the decision not to appoint" him, "the likely witnesses would be one or more Third Circuit judges." Government's Opp'n to Mot. to Compel Disc. at 3. The government also stated that the decision whether to reappoint a bankruptcy judge "is sufficiently judicial in nature to warrant the assertion of the judicial function privilege."[4] Id. at 7. The government further stated that communications between attorneys working for the Third Circuit and the Third Circuit judges were protected by attorney-client privilege. Id. at 7-10. Finally, in support for its Renewed Motion for Certification of an Interlocutory Appeal, the government, among other arguments, asserted that "[b]asic separation-of-powers principles" prevent an Article I court (the Court of Federal Claims) from reviewing a Judicial Branch appointment decision. Id. at 16.

The Court of Federal Claims, inter alia, (i) granted the motion to compel the interrogatory answer insofar as it related to Count II of the complaint, (ii) directed the government to submit under seal to the court all documents in its privilege log for in camera review, (iii) issued an order to show cause why the Due Process claim in Count I should not be dismissed for lack of subject matter jurisdiction, and (iv) denied the Renewed Motion for Certification of an Interlocutory Appeal for the same reasons that it

---

[4] "Judges, like Presidents, depend upon open and candid discourse with their colleagues and staff to promote the effective discharge of their duties." In re Certain Complaints Under Investigation by an Investigating Comm., 783 F.2d 1488, 1519 (11th Cir. 1986) ("Hastings"), quoted in In re Grand Jury, 821 F.2d 946, 957 (3rd Cir. 1987). "[T]here exists a [qualified] privilege . . . protecting confidential communications among judges and their staffs in the performance of their judicial duties." Hastings, 783 F.2d at 1520, cited in Smith v. U.S. Dist. Court for the S. Dist. of Ill., 956 F.2d 647, 650 (7th Cir. 1992). "The judicial privilege is grounded in the need for confidentiality in the effective discharge of the federal judge's duties. In the main, the privilege can extend only to communications among judges and others relating to official judicial business such as, for example, the framing and researching of opinions, orders, and rulings." Hastings, 783 F.2d at 1520.

had denied the original motion. Scholl v. United States, 69 Fed. Cl. 393 (2005) ("Scholl IV"). The government then petitioned this court for a writ of mandamus. As noted above, proceedings in the Court of Federal Claims have been stayed pending our consideration of the petition.

DISCUSSION

I.

A writ of mandamus is a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" Cheney v. U.S. Dist. Court for the D.C., 542 U.S. 367, 380 (2004) (quoting Ex parte Fahey, 332 U.S. 258, 259-60 (1947)). The Supreme Court has explained that "[t]he traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine the court against which mandamus is sought to a lawful exercise of its prescribed jurisdiction." Id. (quoting Roche v. Evaporated Milk Assn., 319 U.S. 21, 26 (1943)).

Three conditions must be satisfied before a court will issue a writ of mandamus. First, "the party seeking issuance of the writ must have no other adequate means to attain the relief he desires." Id. (quoting Kerr v. U.S. Dist. Court for the N. Dist. of Cal., 426 U.S. 394, 403 (1976)). Second, "the petitioner must satisfy the burden of showing that his right to issuance of the writ is 'clear and indisputable.'" Id. at 381 (quoting Kerr, 426 U.S. at 403). Third, "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." Id. (citing Kerr, 426 U.S. at 403).

II.

In its petition for mandamus, the government argues that the Court of Federal Claims "made an extraordinary claim of power to review" the Third Circuit's decision not to reappoint Mr. Scholl as a bankruptcy judge. Pet. at 1. The government asserts:

> Congress vested that appointment power exclusively in the Courts of Appeals, and declined to provide would-be judicial officers with a private right of action in the [Court of Federal Claims]. Review of the Third Circuit's appointment decisions by an Article I court would raise serious Appointments Clause and separation-of-powers problems, which by themselves warrant immediate mandamus review.

Id. The government further asserts that "the [Court of Federal Claims] has now imposed an additional, concrete, and imminent harm on the Third Circuit, by requiring it to turn over for in camera review documents containing Circuit Judges' internal deliberations and other privileged and confidential communications relating to the appointment decision at issue." Id. In view of the trial court's denials of certification for interlocutory appeal and its order compelling discovery, the government concludes that no remedy other than mandamus is available to prevent "imminent, concrete, and irreparable harm" to the Third Circuit, the separation of powers, and the deliberative process. Id. at 1, 26-30.

Mr. Scholl responds that the government has "failed to meet the requirements of the drastic remedy of mandamus and show that the circumstances here are extraordinary." Scholl's Answer to Pet. at 10. According to Mr. Scholl, "the trial court did not usurp power; its decisions are not clearly and indisputably incorrect; relief by appeal from final judgment is available . . . ." Id.

After the mandamus petition and Mr. Scholl's response were filed, we asked the parties to brief, and we heard oral argument on, the question of the jurisdiction of the Court of Federal Claims under the Tucker Act. We now grant the government's petition for mandamus. We do so because the Court of Federal Claims erred by exercising jurisdiction in this case and because the requirements for mandamus have been met. We begin with the matter of jurisdiction.

III.

In relevant part, the Tucker Act gives the Court of Federal Claims "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, . . . or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Thus, "in order to invoke jurisdiction under the Tucker Act, a plaintiff must point to a substantive right to money damages against the United States." Hamlet v. United States, 63 F.3d 1097, 1101 (Fed. Cir. 1995) (citing Testan, 424 U.S. at 398). This means that a Tucker Act plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States. See Todd v. United States, 386 F.3d 1091, 1094 (Fed. Cir 2004); Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997); Adkins v. United States, 68 F.3d 1317, 1321 (Fed. Cir. 1995). A substantive law is money-mandating only if it "can fairly

be interpreted as mandating compensation by the Federal Government for the damage sustained." United States v. Mitchell, 463 U.S. 206, 217 (1983).

A pay statute may serve as the basis for Tucker Act jurisdiction. For example, in James v. Caldera, we stated that 37 U.S.C. § 204 "serves as a money-mandating statute." 159 F.3d 573, 581 (Fed. Cir. 1998). That is because section 204 provides that "a member of a uniformed service who is on active duty" is "entitled to the basic pay of the grade to which assigned." In a given case, whether Tucker Act jurisdiction exists is a question of law that we review without deference to the decision of the trial court. See Core Concepts of Fla., Inc. v. United States, 327 F.3d 1331, 1334 (Fed. Cir. 2003); Clark v. United States, 322 F.3d 1358, 1362 (Fed. Cir. 2003).

Mr. Scholl asserts two bases for Tucker Act jurisdiction in this case. First, he points to 28 U.S.C. § 153(a), which is the pay statute for bankruptcy judges. He alleges that, in the course of considering him for reappointment, the Third Circuit acted in a manner that violated his right to due process under the Fifth Amendment to the Constitution and deprived him of the pay mandated by section 153(a). Second, he points to the Judicial Conference regulations. He asserts that he "performed the duties of a bankruptcy judge according to the high standards of performance regularly met by United States bankruptcy judges" and that, consequently, he was entitled to be reappointed. He argues that the Third Circuit violated the regulations when it did not reappoint him. We address section 153(a) first.

IV.

Section 153(a) clearly is a money-mandating statute, for it provides that a bankruptcy judge "shall receive as full compensation for his services, a salary at an

annual rate that is equal to 92 percent of the salary of a judge of the district court of the United States as determined pursuant [28 U.S.C. §] 135, to be paid at such times as the Judicial Conference of the United States determines." However, section 153(a)'s money-mandating command only benefits an individual who actually holds the position of bankruptcy judge. See Testan, 424 U.S. at 402 ("The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it."). Once Mr. Scholl's term as a bankruptcy judge ended, he no longer was entitled to the pay mandated by section 153(a). See James, 159 F.3d at 581 ("Once James' term of enlistment ended, he no longer was entitled to pay under 37 U.S.C. § 204, because he was no longer a service member.").

Apparently recognizing the problem that he faces under section 153(a), Mr. Scholl argues that his "non-reappointment [was] a form of discharge." Scholl's Supplemental Br. on Jurisdiction at 8. This argument is without merit. It is true that a claim of unlawful discharge may support Tucker Act jurisdiction. Testan, 424 U.S. at 402 ("[T]he employee is entitled to the emoluments of his position until he has been legally disqualified."); James, 159 F.3d at 581 ("If an enlisted member of the Armed Services is wrongfully discharged before the end of his or her current term of enlistment, the right to pay conferred by § 204 continues and serves as the basis for Tucker Act jurisdiction."). However, for two reasons this proposition does not help Mr. Scholl. First, he was not discharged during his 14-year term. He served until the end of his term and was fully paid for his services. Second, it is simply incorrect to say that non-reappointment is a form of discharge. Non-reappointment and discharge are two entirely different things.

Because section 153(a) is a money-mandating statute, insofar as Mr. Scholl bases his suit in the Court of Federal Claims on section 153(a), the court has jurisdiction. See Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc in relevant part) ("If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course."). At the same time, however, as just discussed, it is clear from the face of his complaint that Mr. Scholl does not come within the reach of section 153(a). For that reason, the Court of Federal Claims should have dismissed Mr. Scholl's section 153(a) claim under its Rule 12(b)(6) for failure to state a claim upon which relief could be granted. See id. at 1175-76 ("Assuming that the Court of Federal Claims has taken jurisdiction over the cause as a result of the initial determination that plaintiff's cause rests on a money-mandating source, the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted.").[5]

V.

We turn now to the issue of whether the Judicial Conference regulations support Tucker Act jurisdiction in this case. As seen, the Court of Federal Claims held that

---

[5] In Scholl IV, the Court of Federal Claims wrote: "Because the Due Process Clause of the Fifth Amendment is not a money-mandating provision of the Constitution, see Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988), the Court likely lacks jurisdiction to hear Count 1 of the Plaintiff's Complaint." 69 Fed. Cl. at 395. The court then ordered Mr. Scholl to show cause why Count 1 (based on the Due Process Clause) should not be dismissed for lack of subject matter jurisdiction. Id. We agree that because the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act.

based on section 5.01(b) of the Judicial Conference regulations, "Judge Scholl had a firm right to be reappointed as a judge, absent the showing that he had failed to perform according to high standards." Scholl I, 54 Fed. Cl. at 650.

In James, we stated that "[c]onceivably, Tucker Act jurisdiction . . . could exist if, as matter of law, the regulations gave one in James's circumstances 'a firm right' to have his enlistment extended." 159 F.3d at 582 (citing Austin v. United States, 206 Ct. Cl. 719, 724 (1975)). Pointing to James, Mr. Scholl argues that the Court of Federal Claims correctly held that section 5.01 of the Judicial Conference regulations provided the basis for Tucker Act jurisdiction in this case. He contends that he "had a property interest in his office of bankruptcy judge because he had a firm right of reappointment— the Third Circuit was bound to follow Judicial Conference regulations." Scholl's Reply Supplemental Br. on Jurisdiction at 1. Mr. Scholl's contention is based on the premise that wrongful non-reappointment is a form of wrongful discharge. Scholl's Supplemental Br. on Jurisdiction at 12, 16. Mr. Scholl reasons that "[t]he circumstances involving plaintiff are similar to tenured professors at colleges and universities," who serve under a series of one-year contracts and "have the right of renewal of their contracts upon expiration." Id. at 17 (citing Perry v. Sindermann, 408 U.S. 593 (1972)).

The government disagrees. It argues that because section 5.01 did not give Mr. Scholl a firm right or protected interest in reappointment, it could not form the basis for Tucker Act jurisdiction over Mr. Scholl's suit. It contends that "[f]or the administrative convenience of the Courts of Appeals, the Judicial Conference has adopted procedural guidelines for making reappointment decisions. However, these guidelines do not create an enforceable right in reappointment." Government's Supplemental Br. on

Miscellaneous No. 806                    14

Jurisdiction at 4. The government reasons that because "the decision whether to reappoint a bankruptcy judge is within the sole discretion of the regional Court of Appeals," Mr. Scholl "has no legally protected interest in reappointment. A fortiori, he cannot show a substantive right to money damages." Id. at 2-3. We agree with the government.[6]

As seen above, section 303 of the Federal Courts Improvement Act of 1996 provides that "[w]hen filling vacancies, the court of appeals may consider reappointing incumbent bankruptcy judges under procedures prescribed by regulations issued by the Judicial Conference of the United States." As in effect in 2000, section 5.01 of the Judicial Conference regulations stated that "the court of appeal shall take into consideration the professional and career status of the incumbent." The regulations further stated that "[r]eappointment should not be denied unless the incumbent has failed to perform the duties of bankruptcy judge according to the high standards of performance regularly met by United States bankruptcy judges."[7]

---

[6] The government makes an additional argument with respect to the Judicial Conference regulations. It contends that the regulations are not, in the words of the Tucker Act, a "regulation of an executive department," see 28 U.S.C. § 1491(a)(1), and thus cannot provide the basis for jurisdiction under the Tucker Act. As seen, the Tucker Act, inter alia, gives the Court of Federal Claims "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a)(1) (emphasis added). We do not address this alternative argument by the government. See Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (stating that there is no "jurisdictional hierarchy," so that if there are two reasons to dismiss a case for lack of jurisdiction, either reason, by itself, can serve as the basis for dismissing the case).

[7] As mentioned above, in 2001, the Judicial Conference amended sections 5.01(b) and (c) by deleting a sentence to avoid creating a presumption of reappointment, eliminating the requirement of an initial vote to determine whether the incumbent appeared to merit reappointment, and providing that the court of appeals could proceed directly to the public comment period. See Report of the Proceedings of

---

We do not agree with the Court of Federal Claims that section 5.01 provided Mr. Scholl with a firm right to be reappointed unless "he had failed to perform according to high standards." As in effect in 2000, section 5.01 simply provided circuit courts with guidance in the process for the reappointment of incumbent bankruptcy judges. There is nothing in the language of section 5.01 that indicates the provision was intended to provide incumbent bankruptcy judges with the benefit of a firm right to reappointment. Indeed, one of our sister circuits has recognized under similar circumstances that there is no firm right to reappointment. See Schwartz v. Mayor's Comm. on the Judiciary of the City of N.Y., 816 F.2d 54, 55-57 (2d Cir. 1987) (holding that a New York City Family Court judge had no constitutionally protected property right to reappointment after her ten-year term expired and the mayor decided not to reappoint her, and explaining that "the fact that many, or even most, incumbent judges have been reappointed cannot operate to raise appellant's 'subjective expectation' to a constitutionally protected right . . . . Appellant has failed entirely to demonstrate any 'mutually explicit understanding' sufficient to establish a property right" (citing Perry, 408 U.S. at 601; Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972))); see also McMenemy v. City of Rochester, 241 F.3d 279, 287 (2d Cir. 2001) (stating that "because McMenemy had no legitimate claim of entitlement to—and therefore no property interest in—the position to which he aspired, the procedures used to fill that job are immaterial to his due process claim" and citing Schwartz, 816 F.2d at 57, as holding that "procedures requiring notice and opportunity to be heard with respect to a decision on whether to reappoint a family

---

(Cont'd. . . .)

the Judicial Conference of the United States, March 14, 2001, available at http://www.uscourts.gov/judconf/01-mar.pdf.

court judge did not create a property or liberty interest where there was no underlying property or liberty interest in the job").

Furthermore, assuming, arguendo, non-compliance with section 5.01, there is nothing in the language of the section that can be accurately characterized as money-mandating. See Mitchell, 463 U.S. at 216-17 ("[T]he claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" (quoting Testan, 424 U.S. at 400 (quoting Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 607 (1967))); Samish Indian Nation v. United States, 419 F.3d 1355, 1366 (Fed. Cir. 2005) ("[T]his statutory language and structure is not reasonably read as demonstrating congressional intent to establish a damage remedy under the [Indian Self-Determination and Education Assistance Act] for non-payment of the underlying benefits, based on the wrongful refusal to accord the Samish federal recognition between 1975 and 1996 (thereby precluding entry into a self-determination contract.")). For the foregoing reasons, we hold that the Court of Federal Claims erred as a matter of law in holding that the Judicial Conference regulations support Tucker Act jurisdiction in this case.[8]

VI.

Having determined that the Court of Federal Claims erred in exercising jurisdiction in this case, we have no difficulty concluding that the government is entitled to issuance of a writ of mandamus. That is the case, we think, because the three

---

[8] Mr. Scholl's comparison of his circumstance to that of the untenured professor in Perry v. Sindermann fails because, as a bankruptcy judge, he has no "legitimate claim of entitlement" based on "policies and practices of the institution." 408 U.S. at 602-03. As seen, neither section 153(a), the Judicial Conference Guidelines, Due Process Clause case law, nor the Tucker Act provide such an entitlement or "firm right."

conditions required for mandamus set forth by Cheney have been met. See Cheney, 542 U.S. at 380-81 (citing Kerr, 426 U.S. at 403). First, the government has "no other adequate means to attain the relief [that it] desires." The principal relief that the government desires in this case is preventing Mr. Scholl from obtaining discovery from judges and employees of the United States Court of Appeals for the Third Circuit with respect to the court's decision not to reappoint him as a bankruptcy judge. Because the Court of Federal Claims has (i) denied the government's motion to dismiss, (ii) granted Mr. Scholl's motion to compel, and (iii) denied the government's original and renewed Motion for Certification of an Interlocutory Appeal, there is no way, other than mandamus, that the government can obtain the relief it seeks. Second, we think the government's right to issuance of the writ is "clear and indisputable." For the reasons set forth above, the Court of Federal Claims clearly erred by not dismissing this case. While we do not decide the power of appointment and judicial privilege issues raised by the government, we see no point in subjecting the judges and employees of the Third Circuit to discovery into the court's decision-making process in the setting of a case that clearly, as a matter of law, should be dismissed. Finally, we find, in our discretion, that "the writ is appropriate under the circumstances." Without ordering dismissal of Mr. Scholl's case through our mandamus power, the internal deliberations of the Third Circuit could be subject to discovery. The government is correct that this would cause a concrete and imminent harm that cannot be remedied after the fact.[9]

---

[9] Our opinion should not be read to suggest that mandamus is available as a remedy anytime the government believes that jurisdiction in the Court of Federal Claims is lacking. The circumstances of this case—clear error in the exercise of jurisdiction, combined with the specter of discovery into the deliberations of a federal appeals court relating to the reappointment of a bankruptcy judge—are unique.

CONCLUSION

For the foregoing reasons, we grant the government's petition for a writ of mandamus. We hereby direct the Court of Federal Claims to dismiss Mr. Scholl's complaint.

COSTS

Each party shall bear its own costs.

PETITION FOR WRIT OF MANDAMUS IS GRANTED.