# United States Court of Appeals
# for the Federal Circuit

---

**RALPH E. PRICE,**
*Plaintiff-Appellant,*

v.

**LEON E. PANETTA, SECRETARY OF DEFENSE, DEPARTMENT OF DEFENSE, AND UNITED STATES.**
*Defendants-Appellees.*

---

2011-1437

---

Appeal from the United States District Court for the Eastern District of Virginia in Case No. 10-CV-0216, Judge Jerome B. Friedman.

---

Decided: March 16, 2012

---

ROBERT J. BERG, Meiselman, Denlea, Packman, Carton & Eberz, P.C., of White Plains, New York, argued for plaintiff-appellant.

REGINALD T. BLADES, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellees. With him on the brief were TONY

WEST, Assistant Attorney General, and JEANNE E. DAVIDSON, Director.

_____

Before BRYSON, DYK, and O'MALLEY, *Circuit Judges.*

BRYSON, *Circuit Judge.*

The appellant, Ralph E. Price, was a civilian employee of the Department of Defense. After retiring in 2007, he served as a re-employed annuitant for a fixed two-year term that expired on January 3, 2009. Like many other Department of Defense employees, Mr. Price was subject to the National Security Personnel System ("NSPS"), under which employees were eligible for performance-based incentives in the form of bonuses and salary increases. The NSPS was created by statute in 2003. *See* National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136 § 1101, 117 Stat. 1392, 1621-22 (2003). It remained in effect until 2009, when it was repealed by the National Defense Authorization Act for Fiscal Year 2010, Pub. L. No. 111-84, § 1113(b), 123 Stat. 2190, 2498 (2009).

During the fiscal year that ended on September 30, 2008, Mr. Price received a performance rating for the "appraisal period" ending on that date that made him eligible for NSPS benefits. Those benefits, referred to as a "performance payout," could take the form of a salary increase, a bonus, or a combination of the two. Because Mr. Price's two-year term ended on January 3, 2009, he was not eligible for a salary increase, because by regulation the effective date of any performance payout in the form of a salary increase was the first day of the first pay period beginning on or after January 1 of each year, which in 2009 was January 4. *See* 5 C.F.R. § 9901.342(g)(6).

The dispute in this case turns on the effective date of NSPS bonus payments. The Department of Defense took the position that the effective date of a performance payout in the form of a bonus was the same as the effective date of a performance payout in the form of a salary increase, i.e., the first day of the first pay period beginning on or after January 1 of the year following the employee's appraisal period. Mr. Price argued that the effective date of a performance payout in the form of a bonus should be either the end of the appraisal period (in this case, September 30, 2008) or the first day of the following year (in this case, January 1, 2009). Because he was employed by the Department of Defense on both of those days, he contends that he was eligible for a bonus because he was employed on the effective date of the bonus payments.

When the Department of Defense denied Mr. Price's request to be paid a bonus for the appraisal period ending on September 30, 2008, he filed an action in the United States District Court for the Eastern District of Virginia on behalf of himself and a class of similarly situated former Department of Defense employees. Proceeding under the Little Tucker Act, 28 U.S.C. § 1346, he argued that the Department of Defense had unlawfully denied bonus benefits to him and to all others who had completed an appraisal period but had resigned, retired, or transferred out of the NSPS before the designated effective date for an increase in salary, i.e., the first day of the first pay period of the following year.

The district court held that it had jurisdiction over the action under the Little Tucker Act. On the merits, however, the court sustained the Defense Department's determination that the effective date for the payout of bonuses under the NSPS was the same as the effective

date for increases in salary, i.e., the first day of the first pay period of the year following the appraisal period, January 4, 2009. Because Mr. Price was not employed on that date, the court held that he was not entitled to payment of a bonus for the appraisal period that ended on September 30, 2008.

I

We are met at the outset by the government's argument that the district court lacked jurisdiction over this action. Like the district court, we reject that argument, and for the same reasons.

The Little Tucker Act, 28 U.S.C. § 1346(a), allows a plaintiff to bring an action in district court if the action is based on a claim against the United States "not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department." The Act both creates jurisdiction in the district court and waives sovereign immunity for an action falling within the jurisdictional grant. It does not, however, create a cause of action; for that, the plaintiff must look elsewhere. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in pertinent part). As the Supreme Court has explained, the plaintiff must "identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties," after which "the court must then determine whether the relevant source of substantive law can fairly be interpreted as mandating compensation for damages sustained" as a result of the breach. *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003), quoting *United States v. Mitchell*, 463 U.S. 206, 217, 219 (1983); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472

(2003).  This court has characterized that requirement as imposing on the Tucker Act plaintiff the burden of showing that the source of substantive law is a "money-mandating" provision, i.e., it must mandate "compensation for specific instances of past injuries or labors." *Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 201 (Fed. Cir. 1997).

A statutory or regulatory provision that grants a government official or agency substantial discretion to decide whether to expend government funds in a particular way is not considered money-mandating and does not create a cause of action that can be prosecuted under the Little Tucker Act.  *See Barnick v. United States*, 591 F.3d 1372, 1378 (Fed. Cir. 2010).  However, a statute or regulation that provides for payment of money can qualify as money-mandating if the plaintiff's claim is that the statute or regulation creates a right to payment upon a showing that the plaintiff qualifies for that payment by satisfying designated statutory or regulatory requirements.  *Fisher*, 402 F.3d at 1174-75; *see Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1307-08 (Fed. Cir. 2008); *In re United States*, 463 F.3d 1328, 1334-36 (Fed. Cir. 2006).  Moreover, "[t]he substantive source of law may grant the claimant a right to recover damages either expressly or by implication."  *Navajo Nation*, 537 U.S. at 506, quoting *Mitchell*, 463 U.S. at 217 n.16.  Once the plaintiff has made such a showing, all the plaintiff is required to do in order to establish jurisdiction under the Tucker Act or the Little Tucker Act is to make a non-frivolous assertion that he is "within the class of plaintiffs entitled to recover under the money-mandating source"; the court then has jurisdiction to determine whether the plaintiff is entitled to relief on the merits.  *Jan's Helicopter Serv.*, 525 F.3d at 1307.

Complaints by civil service employees regarding personnel actions covered by the Civil Service Reform Act are subject to the jurisdiction of the Merit Systems Protection Board and do not give rise to actions under the Tucker Act or the Little Tucker Act. *See United States v. Fausto*, 484 U.S. 439, 449, 455 (1988); *Worthington v. United States*, 168 F.3d 24, 26-27 (Fed. Cir. 1999). However, a statute or regulation requiring an agency to pay employees certain amounts under certain circumstances is frequently money-mandating and sufficient to give rise to an action under the Tucker Act or Little Tucker Act for damages. *See Hall v. United States*, 617 F.3d 1313, 1317-18 (Fed. Cir. 2010) (suit for compensation for days employee was engaged in jury service); *Brodowy v. United States*, 482 F.3d 1370, 1375-76 (Fed. Cir. 2007) (statute providing for additional pay for FAA employees transferring between certain positions within the agency is a money-mandating statute); *In re United States*, 463 F.3d at 1334 (statute fixing salary of bankruptcy judges is a money-mandating statute); *Bosco v. United States*, 931 F.2d 879, 882 (Fed. Cir. 1991) ("prevailing rate" wage statute is money-mandating).

As the district court noted, the statutory scheme at issue in this case contemplated that bonuses would be paid in amounts dictated by the ratings given to NSPS employees for the pertinent appraisal period. 5 U.S.C. § 9902(b)(7)(I) (Supp. II 2008) (directing the Defense Department to promulgate regulations providing for a "pay-for-performance evaluation system to better link individual pay to performance and provide an equitable method for appraising and compensating employees"). Those regulations created the NSPS pay system, which established pay structures and pay administration rules that replaced the standard civil service pay system for covered employees. 5 C.F.R. § 9901.301(a). With respect to the

performance pay provisions of the NSPS, the regulations provided that NSPS employees would be rated after the close of each fiscal year, and each employee would be assigned a specific number of "shares" based on that rating. Those shares would then be used to determine the amount of the employee's performance payout. 5 C.F.R. § 9901.342. The amount of the performance payout would be calculated by starting with the number of shares each employee was assigned and multiplying the value of each share by the employee's base salary. *Id.* § 9901.342(g)(2).

In Mr. Price's case, the government does not dispute the amount that he would have been entitled to under the regulations if he had been employed on the effective date of the bonus payments. According to Mr. Price, that amount, calculated according to his rating during the 2008 appraisal period and reduced to a sum certain, was $4,777. The issue in this case is not the amount of the bonus, but whether he was entitled to any bonus at all, which turns not on the exercise of discretion by a government official, but on the date that is determined to be the effective date of the bonus payments for the appraisal period ending on September 30, 2008.

Mr. Price's claim is thus to a fixed amount calculated according to the regulatory formula, and his eligibility to be paid that sum turns on an interpretation of the governing statute and regulations. If Mr. Price is correct that he was employed on the effective date of the bonus payments, he would have an undisputed right to the payment of a bonus in an amount certain. An action to enforce the payment of that amount could properly be brought under the Little Tucker Act, as the regulation in dispute would be money-mandating as to an employee who is determined to be eligible for a bonus in a fixed amount. *See Doe v. United States*, 463 F.3d 1314, 1324-25 (Fed. Cir.

2006) (where statute dictates that "once the agency makes a determination that a particular position is entitled to [certain type of] pay, the employee 'shall' receive premium pay under the statute," such a statute "is money-mandating because once a condition is met, namely that the head of an agency states that a position meets the [listed] criteria . . . , the statute requires payment to employees with that position"); *Fisher*, 402 F.3d at 1174-75 (statute is money-mandating because when the requirements of the statute are met—i.e., when the Secretary determines that a service member is unfit for duty because of a physical disability, and that disability is permanent and stable and is not the result of the member's intentional misconduct or willful neglect—the member is entitled to compensation"); *Doe v. United States*, 100 F.3d 1576, 1582 (Fed. Cir. 1996) (finding statute to be money-mandating when it requires "the payment of some award to claimants who have met the statutory conditions for recovery," despite the "fact that the [government] retains some discretion to determine the amount of an award, within prescribed limits"); *see generally United States v. Testan*, 424 U.S. 392, 402 (1976) (noting authority allowing a Tucker Act suit for relief by a plaintiff arguing that his position carries a statutory entitlement to a higher level of pay).

The government's argument that this case does not fall within the purview of the Little Tucker Act is based in part on its contention that Mr. Price is wrong in interpreting the pertinent regulations, and that under the proper interpretation of the governing regulations he was required to be employed on January 4, 2009, in order to be entitled to a bonus for the performance year ending on September 30, 2008. The government asserts that because Mr. Price was "not entitled to a bonus payout," the NSPS regulations were "not money-mandating with

respect to Mr. Price." Gov. Br. 18. As the district court pointed out in responding to the same argument, however, that argument conflates jurisdiction with the merits. If Mr. Price is correct on the merits of his regulatory argument, he was entitled to be paid the bonus, and the district court would have jurisdiction to issue judgment in his favor. If Mr. Price is wrong on the merits, he is not entitled to be paid. But that is because he would lose his case on the merits, not because the district court would lack jurisdiction to adjudicate the dispute. *See Doe*, 463 F.3d at 1324 ("The jurisdictional requirement is met if a statute or regulation is 'money-mandating.' . . . However, a party bringing suit under the Tucker Act may then lose on the merits if he or she is not one of the persons entitled to pay under the statute or regulation."); *see also Brodowy*, 482 F.3d at 1375 ("Where plaintiffs have invoked a money-mandating statute and have made a non-frivolous assertion that they are entitled to relief under the statute, we have held that the Court of Federal Claims has subject-matter jurisdiction over the case.").

II

On the merits, Mr. Price argues that he was entitled to be paid a performance bonus even though he was not employed on January 4, 2009, the date that the agency identified as the effective date for performance payouts attributable to the 2008 appraisal period. We reject his argument and hold that the Defense Department was entitled to adhere to its consistent practice of designating the first day of the first pay period of the year following the appraisal period as the effective date for the bonus component of the performance payout.

Under the pertinent NSPS regulations, a "performance payout" is defined to mean "the total monetary value

of a performance pay increase and bonus" under the performance-based pay system. 5 C.F.R. § 9901.304. The regulations provide that employees who are no longer covered by the NSPS "on the effective date of the payout . . . are not entitled to a performance-based payout." *Id.* § 9901.342(g)(7). The regulations further provide that the effective date of the salary increase component of the performance payout "will be the first day of the first pay period beginning on or after January 1 of each year." *Id.* § 9901.342(g)(6). Mr. Price points out that while the "effective date" regulation expressly refers to the effective date of the salary increase component of the performance payout, it does not expressly refer to the effective date of the bonus component of the performance payout. In fact, no regulatory provision speaks expressly to that issue.

Mr. Price argues that the court should adopt the end of the appraisal period as the effective date of the bonus component of the performance payout. By that time, he contends, the employee has "earned" the bonus by the quality of his or her work. It is unfair, Mr. Price asserts, to deprive an employee who "earned" a bonus during the appraisal period from receiving that bonus simply because the employee left the agency several months later.

The question, however, is not what the court might select as the most equitable date for a bonus to vest, but rather whether the agency's selection of the first day of the first pay period in the following year is a permissible choice. As noted, there is no statutory or regulatory provision setting the particular date on which the right to bonus payments vests. In the absence of an express provision as to the effective date of bonus payments, the agency has construed its regulations to make the effective date for bonuses the same as the effective date for salary increases.

It is well settled that an agency's interpretation of its own regulations is entitled to deference unless that interpretation is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945). That principle applies whether the regulation in question is ambiguous or simply silent on the issue in question. *See White v. United States*, 543 F.3d 1330, 1337-38 (Fed. Cir. 2008). Moreover, an agency's interpretation of its regulations is entitled to that generous degree of deference even when that interpretation is offered in the very litigation in which the argument in favor of deference is made, as long as there is "no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Auer*, 519 U.S. at 462; *Reizenstein v. Shinseki*, 583 F.3d 1331, 1335 (Fed. Cir. 2009); *Abbott Labs. v. United States*, 573 F.3d 1327, 1331 (Fed. Cir. 2009); *Gose v. U.S. Postal Serv.*, 451 F.3d 831, 838 (Fed. Cir. 2006) ("Legitimate agency interpretations may be made even during the very administrative determination that has become the subject of review. However, the interpretation must truly be one that had been applied by the agency, either prior to or, at the latest, during the exercise of its administrative powers in the present matter.").

There is no reason to believe that the Defense Department's interpretation of its NSPS regulations is merely a "convenient litigating position" or a "post hoc rationalization" in this case. *See Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871, 881 (2011); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988). To the contrary, the record shows that the Department of Defense has treated the effective date of the bonus component of the performance-based payout in the same manner since the initiation of the NSPS program in 2004. The Departmen-

tal regulations that were in effect before they were revised in 2008 provided that "Performance-based payouts shall be effective the first day of the first pay period beginning on or after January 1 of each year." *Dep't of Def. Civilian Personnel Manual*, DOD 1400.25-M, subch. 1930.9.4. In that form, the regulations unambiguously provided that the "first day of the first pay period" after the first of each year was the effective date for all performance-based payouts, whether in the form of salary increases or bonuses. Pursuant to the 2008 revisions to the NSPS statute, *see* National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1106, 122 Stat. 3, 349, 356 (2007), the Defense Department repromulgated its regulations through notice-and-comment procedures. In the course of the revisions made to the regulations, the language of the effective date provision was amended to its current form, which continues to provide that employees must be employed on the effective date of the payout to receive a performance-based payout but defines the "effective date" only for increases in salary. 5 C.F.R. § 9901.342(g)(6) & (7).

From the regulatory record, it is clear that, despite the omission of reference to the effective date for bonus payments, the new regulations were intended to codify and continue the previous practice rather than to alter it. The new regulations largely tracked the previous version, and the Department identified those areas in which changes were intended. Those specified modifications did not include any reference to altering the effective date of bonuses by separating salary increases from bonuses for purposes of determining the date of vesting. *See Proposed Rules*, 73 Fed. Reg. 29,882, 29,890 (May 22, 2008). During the notice-and-comment process, a commenter suggested that an NSPS employee "who earns a bonus for the performance year but retires before the end of the calen-

dar year should still be able to receive a bonus payment." *Final Rule*, 73 Fed. Reg. 56,344, 56,372 (Sept. 26, 2008). The Department of Defense rejected that suggestion, explaining that the regulation "clearly states that an employee who is no longer covered by NSPS on the effective date of the payout is not entitled to a performance-based payout." *Id.* While that response did not specifically identify the effective date of the bonus component of the payout, it rejected the underlying rationale of Mr. Price's argument—that an employee who is covered by the NSPS during the appraisal period should be entitled to the bonus earned during that period.

The administrative record thus shows that the interpretation of the regulation advanced by the government in this case is consistent with the position taken by the Department of Defense as to the effective date issue since the Department first promulgated regulations implementing the NSPS. In short, this is a case in which "the agency's course of action indicates that the interpretation of its own regulations reflects its considered views." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007). The Department's interpretation, which is not "plainly erroneous or inconsistent with the regulation," *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994), is therefore entitled to deference. Because Mr. Price has not pointed to any statutory or regulatory language that is contrary to the Department's interpretation of the regulatory rule, we agree with the district court that the Department's interpretation governs this case and requires that Mr. Price's claim be rejected.

**AFFIRMED**