# United States Court of Appeals for the Federal Circuit

---

**WASHINGTON FEDERAL, MICHAEL MCCREDY BAKER, CITY OF AUSTIN POLICE RETIREMENT SYSTEM, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-2190

---

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00385-MMS, Senior Judge Margaret M. Sweeney.

---

Decided:  February 22, 2022

---

KEVIN GREEN, Hagens Berman Sobol Shapiro LLP, San Diego, CA, argued for plaintiffs-appellants.  Also represented by STEVE BERMAN, Seattle, WA; ROBERT M. ROSEMAN, Spector Roseman & Kodroff, P.C., Philadelphia, PA.

MARK B. STERN, Civil Division, Appellate Staff, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by BRIAN M.

BOYNTON, KYLE T. EDWARDS, GERARD SINZDAK, ABBY CHRISTINE.

———————————

Before LOURIE, PROST, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

This is a companion to appeals in eight other matters: *Fairholme Funds, Inc. v. United States*, Nos. 20-1912, -1914, *Owl Creek Asia I, L.P. v. United States*, No. 20-1934, *Mason Capital L.P. v. United States*, No. 20-1936, *Akanthos Opportunity Fund, L.P. v. United States*, No. 20-1938, *Appaloosa Investment Ltd. Partnership I v. United States*, No. 20-1954, *CSS, LLC v. United States*, No. 20-1955, *Arrowood Indemnity Co. v. United States*, No. 20-2020, and *Cacciapalle v. United States*, No. 20-2037.[1]  In those cases (collectively, the *Fairholme* appeals), certain shareholders of the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation (collectively, the Enterprises or Companies) challenged actions taken by the Federal Housing Finance Agency (FHFA) after it placed the Enterprises under conservatorship.  Those shareholders alleged that a "net worth sweep" under an amendment to the FHFA's preferred stock purchase agreements (PSPAs) with the Department of Treasury (Treasury) constituted, *inter alia*, a

---

[1]    Some of the appellants in those other matters chose to consolidate their cases for briefing purposes, but the actual appeals were never consolidated.  We granted the motions of other appellants to consolidate the appeals in *Owl Creek*, No. 20-1934, *Mason Capital*, No. 20-1936, *Akanthos*, No. 20-1938, *Appaloosa*, No. 20-1954, and *CSS*, No. 20-1955.  We resolved all those matters in our decision in *Fairholme Funds, Inc. v. United States*, Nos. 20-1912, -1914, -1934, -1936, -1938, -1954, -1955, -2020, -2037 (Fed. Cir. Feb. 22, 2022).

direct taking or illegal exaction of their share value. We affirmed decisions of the United States Court of Federal Claims (Claims Court) dismissing those claims for lack of standing.[2]  *Fairholme Funds, Inc. v. United States*, Nos. 20-1912, -1914, -1934, -1936, -1938, -1954, -1955, -2020, -2037, slip op. at 7 (Fed. Cir. Feb. 22, 2022).

Here, Washington Federal, Michael McCredy Baker, and the City of Austin Police Retirement System (collectively, the Washington Federal Plaintiffs) also alleged direct takings and illegal exaction claims. We separated this appeal from the *Fairholme* appeals because the claims here primarily were predicated on the imposition of the conservatorships over the Enterprises, rather than on actions the FHFA later took in its capacity as conservator. Specifically, the Washington Federal Plaintiffs alleged that the FHFA lacked the statutory authority to impose the conservatorships.[3]  The Washington Federal Plaintiffs now appeal the Claims Court's final judgment dismissing their claims for lack of standing. *Wash. Fed. v. United States*, 149 Fed. Cl. 281 (2020). We affirm.

## I. BACKGROUND

We presume familiarity with the background set forth in our *Fairholme Funds* decision and recite only those facts necessary to address the issues raised in this appeal.

Congress created the Enterprises to, *inter alia*, provide liquidity to the mortgage market. *See Collins v. Yellen*,

---

[2]  One shareholder, Andrew T. Barrett, asserted derivative claims on behalf of the Enterprises in the *Fairholme* appeals. Our resolution of those claims is not relevant to the issues in this appeal.

[3]  As discussed below, the Washington Federal Plaintiffs also originally cited the net worth sweep as a factual predicate for their claims but have since withdrawn that assertion.

141 S. Ct. 1761, 1770–71 (2021); 12 U.S.C. § 1716(4). The Enterprises do so by purchasing mortgages, pooling them into mortgage-backed securities, and selling them to investors. *Collins*, 141 S. Ct. at 1771. As a result, the Enterprises relieve mortgage lenders of the risk of default and free up their capital to make additional loans. *Id.*

The Enterprises operate under congressional charters as for-profit corporations owned by private shareholders. *Id.* at 1770–71. They have long benefited from a perception that the federal government would honor their obligations should they experience financial difficulties. *Perry Cap. LLC v. Lew* ("*Perry I*"), 70 F. Supp. 3d 208, 215 (D.D.C. 2014); Dep't of Treasury & Dep't of Hous. & Urb. Dev., Reforming America's Housing Finance Market: A Report to Congress 8 (2011) ("Treasury & HUD Report") ("[The Enterprises] benefited from . . . a widely perceived government guarantee—the commonly held assumption that large losses would be backstopped by the taxpayer."). This perception and other government benefits allowed the Enterprises to purchase mortgages and mortgage-backed securities at cheaper rates than would otherwise prevail in the private market. *See Perry I*, 70 F. Supp. 3d at 215; Treasury & HUD Report at 8; J.A. 94 (¶ 15).

When the housing bubble burst in 2008, the Enterprises experienced significant losses and found themselves owning an "immense inventory of defaulted and overvalued subprime mortgages." *DeKalb Cnty. v. Fed. Hous. Fin. Agency*, 741 F.3d 795, 798 (7th Cir. 2013); *see Collins*, 141 S. Ct. at 1771. Though the Enterprises remained solvent, many feared the Enterprises would eventually default and "throw the housing market into a tailspin." *Collins*, 141 S. Ct. at 1771.

To address that concern, Congress enacted the Housing and Economic Recovery Act of 2008 (HERA) giving the FHFA discretion to appoint itself as conservator or receiver over the Enterprises. 12 U.S.C. § 4617. HERA constrained

the FHFA's discretion by providing twelve grounds on which the agency may appoint itself as conservator or receiver. *Id.* § 4617(a)(2)–(3). These grounds include the consent of the Enterprises, by resolution of their boards of directors or their shareholders or members. *Id.* § 4617(a)(3)(I).

HERA provides for limited judicial review of the FHFA's decision to appoint itself as conservator or receiver over the Enterprises:

> If the Agency is appointed conservator or receiver under this section, the [Enterprise] may, within 30 days of such appointment, bring an action in the United States district court for the judicial district in which the home office of such [Enterprise] is located, or in the United States District Court for the District of Columbia, for an order requiring the Agency to remove itself as conservator or receiver.

*Id.* § 4617(a)(5)(A).    The court in which the action is brought "shall, upon the merits, dismiss such action or direct the Agency to remove itself as such conservator or receiver." *Id.* § 4617(a)(5)(B).

On September 6, 2008, the FHFA's Director placed the Enterprises under conservatorship with the consent of the Enterprises' boards of directors. *See* J.A. 90 (¶ 7). Thereafter, the Director negotiated PSPAs with Treasury. *See* J.A. 112–13 (¶ 68). In August 2012, the FHFA and Treasury amended the PSPAs to require the Enterprises to pay Treasury quarterly dividend payments equal to their entire net worth minus a small capital reserve amount, i.e., the "net worth sweep." *See* J.A. 116 (¶ 76); J.A. 162 (¶ 204).

In June 2013, the Washington Federal Plaintiffs filed a class action against the government before the Claims Court. They later amended their complaint so that it contained only one count:  a Fifth Amendment takings claim

and/or an illegal exaction claim.[4]  The operative complaint broadly alleges that, in imposing the conservatorships over the Enterprises, the government "destroyed the rights and value of the property interests tied to the common and preferred stock of the Companies" held by the Washington Federal Plaintiffs.  J.A. 166 (¶ 218).

The complaint centers around the Washington Federal Plaintiffs' allegation that the government "improperly impos[ed] the . . . conservatorships over the Companies under false pretenses with no valid statutory basis."  J.A. 166–67 (¶ 222(b)).  According to the Washington Federal Plaintiffs, the FHFA obtained the consent of the Enterprises' boards of directors through "misrepresentation and duress," as well as by immunizing the directors from liability for consenting to a conservatorship.  J.A. 121–22 (¶¶ 87, 89) (citing 12 U.S.C. § 4617(a)(6)).  The complaint asserts that, as a result of the FHFA's unlawful appointment as conservator, the FHFA "terminated all shareholder meetings and all shareholder voting rights," ordered the Enterprises "to cease paying dividends on their preferred and common stock," and ordered the Enterprises "to delist their common and preferred shares from the New York Stock Exchange." *E.g.*, J.A. 161–62 (¶¶ 202–03).  The Washington Federal Plaintiffs also alleged that the net worth sweep constituted a taking or illegal exaction.  J.A. 153 (¶ 185). After the Supreme Court confirmed in *Collins* that the FHFA had

---

4    The Claims Court treated the count as two legal claims that the Washington Federal Plaintiffs pled in the alternative, and we do as well.  *See Wash. Fed.*, 149 Fed. Cl. at 288–89.  In contrast to a takings claim, which involves lawful government action, an illegal exaction claim "involves money that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'"  *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005).

statutory authority to enter into the amendment to the PSPAs effectuating the net worth sweep, 141 S. Ct. at 1777, the Washington Federal Plaintiffs abandoned that aspect of their claims.[5] Appellants' Suppl. Resp. Br. on *Collins* at 1.

The government moved to dismiss the claims in every case before the Claims Court in a single, omnibus motion. *Wash. Fed.*, 149 Fed. Cl. at 289. The Claims Court ultimately granted the government's motion, dismissing the Washington Federal Plaintiffs' operative complaint for lack of standing. *Id.* at 297.

Two of the Claims Court's holdings are relevant to this appeal. First, the court rejected the government's argument that, because HERA's 30-day limitations period bars the Washington Federal Plaintiffs' claims, the court lacks subject matter jurisdiction over the case. *Id.* at 291–92. The court explained that the applicable statute of limitations is not HERA's 30-day period under 12 U.S.C. § 4617(a)(5), but the general 6-year period under 28 U.S.C. § 2501 for claims over which the Claims Court has jurisdiction. *Id.* Because the Washington Federal Plaintiffs filed suit within six years of the imposition of conservatorships over the Enterprises, the Claims Court found their claims timely. *Id.* at 292.

Second, the Claims Court held that the Washington Federal Plaintiffs lacked standing to litigate their direct takings and illegal exaction claims because the claims are

---

[5]    In their opening brief on appeal, the Washington Federal Plaintiffs also asked, in the alternative, that we remand this matter to the Claims Court so that they might amend their claims to assert the claims derivatively on behalf of the Enterprises. Appellants' Opening Br. 41–46. They have since withdrawn that request as well. Appellants' Suppl. Resp. Br. on *Collins* at 1.

substantively derivative. *See id.* at 296. The court found that the Washington Federal Plaintiffs' claims and the direct takings and illegal exaction claims in *Fairholme Funds* are "virtually indistinguishable for standing purposes." *Id.* at 293. While the Washington Federal Plaintiffs placed greater emphasis on the imposition of the conservatorships, the Claims Court explained that the claims here similarly rest on the expropriation of the Washington Federal Plaintiffs' economic interests and property rights as shareholders. *Id.* According to the court, the Washington Federal Plaintiffs' claims are indistinguishable from an overpayment claim: "The FHFA, through the imposition of the conservatorships and subsequent manipulations of the Enterprises, gutted [the Enterprises] and left nothing for the shareholders." *Id.* at 295; *see also id.* at 294 (referring to the standing analysis in *Fairholme Funds, Inc. v. United States*, 147 Fed. Cl. 1, 45–47 (2019)). The court noted that the Washington Federal Plaintiffs' claims are premised on allegations that the conservatorships harmed the Enterprises themselves, and only thereby caused indirect harm to the shareholders. *See id.* at 295. The Claims Court therefore dismissed the Washington Federal Plaintiffs' claims for lack of standing.

The Washington Federal Plaintiffs timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

We review a dismissal for lack of standing de novo. *See Rack Room Shoes v. United States*, 718 F.3d 1370, 1374 (Fed. Cir. 2013).

On appeal, the Washington Federal Plaintiffs argue that they have standing to assert their direct takings and illegal exaction claims arising out of the FHFA's actions to coerce the Enterprises into consenting to conservatorships. In response, the government maintains that § 4617(a)(5) bars the Washington Federal Plaintiffs' challenge to the

FHFA's appointment as conservator over the Enterprises. Because it is a jurisdictional challenge, we address the government's threshold argument before turning to the substance of the Washington Federal Plaintiffs' appeal.

## A.  The Claims Court's jurisdiction

The government argues that the Claims Court should have dismissed the Washington Federal Plaintiffs' claims as untimely and filed in the wrong court.  Specifically, the government asserts that 12 U.S.C. § 4617(a)(5)—which permits the Enterprises ("the regulated entity") to challenge the FHFA's appointment as conservator in a district court action within 30 days of the appointment—is the exclusive means of challenging the FHFA's appointment.  According to the government, the Washington Federal Plaintiffs' suit is "incontrovertibly a challenge to the appointment of the conservator."  Appellee's Resp. Br. 20.  While the Washington Federal Plaintiffs agree that § 4617(a)(5) provides the exclusive means for challenging the FHFA's appointment as conservator, they distinguish between such challenges and their claims "seek[ing] monetary relief for past harm *directly resulting from* the imposition of the conservatorships."  Appellants' Reply Br. 20.

Although, as we discuss below, § 4617(a)(5) prohibits the Washington Federal Plaintiffs from pursuing their claims, the application of that provision here is a merits-based bar, not one that implicates the Claims Court's jurisdiction over the Washington Federal Plaintiffs' claims. The Tucker Act provides the Claims Court with subject matter jurisdiction over "any claim against the United States founded . . . upon the Constitution," including the Washington Federal Plaintiffs' takings and illegal exaction claims.  *See* 28 U.S.C. § 1491.  The statute of limitations to bring such claims is six years after a claim first accrues. *Id.* § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such

claim first accrues."). Here, the Washington Federal Plaintiffs timely filed their claims in June 2013, within six years of the FHFA's appointment as conservator in September 2008.

We also disagree with the government's characterization of the Washington Federal Plaintiffs' claims as no more than a challenge to the FHFA's appointment as conservator. While there is no dispute that the claims allege that the FHFA improperly coerced the Enterprises' boards of directors to consent to the conservatorships, the Washington Federal Plaintiffs also claim that, by those unlawful actions, the government took or illegally exacted their property interests as shareholders of the Enterprises without just compensation. *See, e.g.*, J.A. 116–18 (¶¶ 77–81); J.A. 153–63 (¶¶ 185–208); J.A. 165–68 (¶¶ 217–25). We therefore reject the government's argument that we should dismiss the Washington Federal Plaintiffs' claims on jurisdictional grounds.

## B. The Washington Federal Plaintiffs' illegal exaction claim

Although the 30-day limitations period in § 4617(a)(5) does not deprive the Claims Court of jurisdiction over the Washington Federal Plaintiffs' claims, we affirm the Claims Court's dismissal of their illegal exaction claim on the alternative ground that the Washington Federal Plaintiffs fail to state a claim upon which relief may be granted.[6] Our case law makes clear that the Washington Federal Plaintiffs may not challenge the propriety of the FHFA's

---

[6]    While the Claims Court predicated its dismissal of the Washington Federal Plaintiffs' illegal exaction claim on standing grounds, we may affirm the Claims Court's dismissal on any grounds supported by the record. *See Wyandot Nation of Kan. v. United States*, 858 F.3d 1392, 1397 (Fed. Cir. 2017).

appointment as conservator through an illegal exaction claim in the Claims Court. *See Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1366 (Fed. Cir. 2001). Instead, the Washington Federal Plaintiffs must litigate their claims on the assumption that the FHFA's appointment as conservator was lawful. *See id.* Therefore, the Washington Federal Plaintiffs' illegal exaction claim, which requires showing that the FHFA's imposition of the conservatorships was unlawful, is not plausible.

We have explained that an uncompensated taking and an unlawful agency action constitute separate wrongs that give rise to separate causes of action. *See id.* at 1365 (quoting *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1364 (Fed. Cir. 1998)). Where Congress mandates the review process for an allegedly unlawful agency action, a plaintiff may not separately litigate the issue of whether the agency acted in violation of statute or regulation in a takings (or illegal exaction) action. *See id.* at 1366. In other words, the plaintiff may not claim that it is entitled to prevail *because* the agency acted in violation of statute or regulation. *See id.* Rather, where Congress mandates the review process for the allegedly unlawful agency action, a plaintiff must litigate on the assumption that the agency action is authorized and lawful, i.e., that the government took its property *regardless of* whether the agency acted consistently with its statutory and regulatory mandate. *See id.* at 1365–66. That means that an illegal exaction claim predicated on the alleged unlawfulness of the agency action is not plausible as a matter of law.

In *Rith Energy*, the Department of Interior denied Rith Energy a permit to resume mining coal in a certain area pursuant to the Surface Mining Control and Reclamation Act of 1977 (SMCRA). *See id.* at 1358–60. Congress assigned the question of whether the agency violated SMCRA in denying the permit to an administrative process within the agency, subject to judicial review in a district court. *See*

*id.* at 1365; *see also* 30 U.S.C. §§ 1264, 1276.[7] Rith Energy engaged in that process, lost its administrative appeal, and voluntarily dismissed its district court action seeking review of the administrative ruling. *Rith Energy*, 247 F.3d at 1360. Rith Energy then filed a takings claim in the Claims Court, asserting that the government took its property by preventing it from mining. *See id.* at 1361. We held that, "having forgone its challenge to [the agency's] administrative actions, Rith is not free to renew its challenge to those actions under the cover of a takings claim in the Court of Federal Claims." *Id.* at 1366. Importantly, we concluded that, while Rith Energy could not argue that the permit denial was unlawful under SMCRA, it could assert that the permit denial constituted a taking on the assumption that the administrative action was both authorized and lawful. *See id.* at 1365–66.

Here, there is no dispute that Congress provided the exclusive means to challenge the grounds of the FHFA's appointment as conservator in 12 U.S.C. § 4617(a)(5): the Enterprises may challenge the FHFA's appointment in district court within 30 days of the appointment. The Enterprises did not bring such a challenge, nor did their shareholders bring a derivative challenge on their behalf. Accordingly, "having forgone [their] challenge" to the

---

7   Section 1264 of Title 30 specifies that a permit applicant, or any person whose interests may be adversely affected by the agency's final decision, "may request a hearing on the reasons for the final determination," after which the agency must issue a written decision granting or denying the permit and stating its reasons. 30 U.S.C. § 1264(c). The statutory provision further provides a right to appeal the agency's decision in accordance with 30 U.S.C. § 1276, which specifies the venue, timing, applicable standards, and procedures of the district court's review. *See id.* §§ 1264(f), 1276.

FHFA's decision to appoint itself as conservator over the Enterprises, the Washington Federal Plaintiffs "[are] not free to renew [their] challenge to those actions under the cover of a takings claim in the" Claims Court. *See id.* at 1366. Instead, the Washington Federal Plaintiffs must litigate their claims "on the assumption that the administrative action was both authorized and lawful." *See id.* Because the Washington Federal Plaintiffs' illegal exaction claim requires showing that the FHFA's appointment as conservator over the Enterprises was unlawful under HERA, we affirm the Claims Court's dismissal of their illegal exaction claim on alternative grounds of failure to state a claim.

The Washington Federal Plaintiffs argue that there is no basis for the government's "ambitious reading" that "any dispute as to the *legality* of the appointment must be resolved immediately in the district court." Appellants' Reply Br. 21 (quoting Appellee's Resp. Br. 21). And, they make much of the fact that the mechanism for challenge in § 4617(a)(5) only authorizes the Enterprises to challenge the conservatorship. *Id.* at 19–20. As noted, *Rith Energy* forecloses the Washington Federal Plaintiffs' argument. Where Congress specifies the means of challenging an agency action, like the FHFA's decision to appoint itself conservator over the Enterprises, a plaintiff may not challenge the lawfulness of the agency action under the cover of a takings (or illegal exaction) claim in the Claims Court. *See Rith Energy*, 247 F.3d at 1365–66. While it is true that § 4617(a)(5) refers to "the regulated entit[ies]" (i.e., the Enterprises), an action challenging the conservatorship could have been asserted derivatively by the shareholders on behalf of the Enterprises, but was not.

The Washington Federal Plaintiffs also argue that interpreting § 4617(a)(5) to bar direct claims by shareholders seeking monetary relief for Fifth Amendment violations would raise serious due process concerns. We disagree. As noted, the statute of limitations in § 4617(a)(5) does not

time-bar Fifth Amendment takings claims before the Claims Court. A litigant simply cannot assert a plausible takings or illegal exaction claim predicated on the unlawfulness of an agency action where Congress provided an alternate exclusive means to challenge that action. As the government points out, moreover, a Due Process challenge to HERA and the implications of its statutory structure, even if such a challenge could be brought, may not be brought in the Claims Court. *See* Appellee's Resp. Br. 38; *see also In re United States*, 463 F.3d 1328, 1335 n.5 (Fed. Cir. 2006) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act.").

### C. The Washington Federal Plaintiffs' takings claim

#### 1. Failure to allege a cognizable takings claim

We similarly affirm the Claims Court's dismissal of the Washington Federal Plaintiffs' takings claim on the alternative ground that the Washington Federal Plaintiffs fail to state a claim upon which relief may be granted.[8]

The Washington Federal Plaintiffs' takings claim rests on the premise that the appointment of the FHFA as conservator was unlawful. *See* J.A. 166–67 (¶ 222) ("[A]s a result of the Government's *legally unsubstantiated* imposition of the conservatorships, the Government destroyed the value of the stock held by Plaintiffs . . . and violated the fundamental principles of the . . . Takings Clause[ ] of the United States Constitution." (emphasis added)); *see also* J.A. 95 (¶ 16); J.A. 117–36 (¶¶ 78, 82–143); J.A. 153–54 (¶¶ 185–86); J.A. 157–59

---

[8]   The Claims Court predicated its dismissal of the Washington Federal Plaintiffs' takings claim on standing grounds, but we may affirm the Claims Court's dismissal on any grounds supported by the record. *See Wyandot*, 858 F.3d at 1397.

(¶¶ 194–96). Indeed, the Washington Federal Plaintiffs' complaint makes clear that the harms they allegedly suffered—i.e., the property interests taken by the government—flowed directly from the unlawful appointment of the FHFA as conservator. *See also* Appellants' Opening Br. 3–4 ("The Washington Federal Plaintiffs aver, in great detail, a coerced nationalization of the Companies starting in 2008 that supplanted the Companies' shareholders [and] eliminated their ownership rights . . . , without just compensation . . . ."); Appellants' Reply Br. 1 ("The forced imposition of the 2008 conservatorships over two companies that were *not* insolvent, and did not need a bailout, is at the core of this action . . . ."); *id.* at 4 (asserting the forced conservatorships and coerced consent are "key factual underpinnings" of the Washington Federal Plaintiffs' claims); *cf. id.* at 20 (characterizing claims as seeking relief for "past harm *directly resulting from* the imposition of the conservatorships"); Oral Arg. at 2:31–3:33, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-2190_08042021.mp3 (explaining that the alleged harm to the rights to vote, receive dividends, and transfer stock "occurred as a result of the conservatorships").

That takings claim is not plausible under *Rith Energy*. As noted, where Congress mandates the review process for an allegedly unlawful agency action, a plaintiff may not assert a takings claim in the Claims Court claiming entitlement to prevail *because* the agency acted in violation of a statute or regulation. *See Rith Energy*, 247 F.3d at 1366. This is because a plaintiff does not have the right to litigate the issue of whether an agency's action is unlawful under the guise of a takings claim, rather than through the congressionally mandated review process. *See id.* Because, as pled, the Washington Federal Plaintiffs' takings claim attempts to litigate the propriety of the FHFA's appointment as conservator and to circumvent the exclusive review process under 12 U.S.C. § 4617(a)(5), we affirm the Claims Court's dismissal of the claim.

As in *Rith Energy*, moreover, the "consequence of assuming the lawfulness of [the government's] actions . . . is to limit the issue before us" to whether imposing restrictions on the Enterprises' right to issue dividends, ordering them to delist their common and preferred shares from the New York Stock Exchange, and terminating certain rights previously attendant to share ownership constitute a taking. *See id.* And that inquiry requires us to determine whether, upon lawful imposition of the conservatorships, the shareholders retained any investment-backed expectation that the value of their shares would not be diluted and the rights otherwise attendant to share ownership would not be temporarily suspended. *Cf. id. Collins* makes clear that they did not.

As the *Collins* court explained, the FHFA's authority under HERA is both unusual and extremely broad; the FHFA as conservator "may" act in the interests of the Enterprises but is not required to do so. 12 U.S.C. § 4617(b)(2)(J); *Collins*, 141 S. Ct. at 1776; *see also Fairholme Funds*, slip op. at 46; *Perry Cap. LLC v. Mnuchin* ("*Perry II*"), 864 F.3d 591, 607–08 (D.C. Cir. 2017). Under HERA, the FHFA may act in ways that are *not* in the best interests of either the Enterprises or the shareholders, and, instead, are beneficial to the FHFA and the public it serves. *Collins*, 141 S. Ct. at 1776; *Fairholme Funds*, slip op. at 46; *Perry II*, 864 F.3d at 608 (noting that, unlike the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), which permits the FDIC to take into account the interests of depositors, HERA does not require the FHFA to consider the interests of the shareholders).

Where shareholders hold shares in such highly regulated entities—entities that the government has the authority to place into conservatorship—where the conservator's powers are extremely broad, and where the entities were lawfully placed into such a conservatorship, shareholders lack a cognizable property interest in the context of a takings claim. *Golden Pac. Bancorp v. United*

*States*, 15 F.3d 1066, 1073–75 (Fed. Cir. 1994) (holding that Golden Pacific lacked a historically rooted expectation of compensation necessary to establish a Fifth Amendment taking because it chose to invest in a highly regulated entity); *cf. Fairholme Funds*, slip op. at 45–47 & n.14.[9] For this reason as well, we find that the Washington Federal Plaintiffs cannot assert a cognizable takings claim regarding actions taken in connection with the imposition of the conservatorships in 2008.

2. Lack of standing to assert a direct takings claim

As an independent ground, we affirm the Claims Court's dismissal of the Washington Federal Plaintiffs' takings claim for lack of standing. The Washington Federal Plaintiffs lack standing to assert their substantively derivative claims as direct claims. The doctrine of standing asks whether a litigant is entitled to have a federal court resolve its grievance. *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). A litigant generally must assert its own legal rights and interests; it cannot rest its claim to relief on the legal rights or interests of third parties. *See id.* at 129 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Related to this prudential limitation on third-party standing,[10] shareholders generally may not initiate an

---

[9] The highly regulated nature of the Enterprises always limited the investment-backed expectations of their shareholders. To the extent there existed any expectations at all, the shareholders lacked them after the passage of HERA and certainly after the FHFA imposed the conservatorships. *Cf. Fairholme Funds*, slip op. at 45–47 & n.14.

[10] In *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Supreme Court held that the label of prudential standing was inappropriate for the requirement that a plaintiff's interests fall within the zone of interests protected by the law invoked.

action to enforce the rights of a corporation but may do so if the corporation's management refuses to pursue the same action for reasons other than good-faith business judgment. *Franchise Tax Bd. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). Such an action by shareholders must be a derivative action because the corporation has the direct interest in the cause of action. *Starr Int'l Co. v. United States*, 856 F.3d 953, 966 (Fed. Cir. 2017). Only shareholders with a direct, personal interest in a cause of action may bring a direct shareholder action. *Id.* (quoting *Franchise Tax Bd.*, 493 U.S. at 336). Shareholders whose injuries are derivative of their ownership interests in a corporation may not bring a direct shareholder action to redress their injuries. *Id.* (quoting *Franchise Tax Bd.*, 493 U.S. at 336).

While federal law governs the standing inquiry, there is a presumption that state law should be incorporated into federal common law unless doing so would frustrate specific objectives of federal programs. *Starr*, 856 F.3d at 966 (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991)). Consistent with federal law, Delaware courts consider two questions when determining whether a shareholder's claim is derivative or direct. *Id.*; *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004) (en banc). First, who suffered the alleged harm, the corporation or the suing stockholder individually? *Tooley*, 845 A.2d at 1035. Second, who would receive the benefit of the recovery or other remedy? *Id.* A

---

*See id.* at 127 & n.3, 129. The Court did not, however, extend its holding to the prudential principle of third-party standing. *See id.* at 127 n.3 ("This case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day."); *Starr Int'l Co. v. United States*, 856 F.3d 953, 965 n.18 (Fed. Cir. 2017).

stockholder's claimed direct injury must be independent of any alleged injury to the corporation. *Id.* at 1039. The Delaware Supreme Court recently confirmed, moreover, that a suing shareholder's claims must be completely independent from the harm to the corporation before they may be asserted directly. *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1267, 1272–73 (Del. 2021) (en banc) (overruling the dual nature doctrine espoused in *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006), and confirming that, even when shareholders assert harm to rights attendant to share ownership, those claims must be asserted derivatively if the shareholders' harm is not independent of harm to the corporation).

Here, the Washington Federal Plaintiffs' takings claim is derivative in nature because the Washington Federal Plaintiffs' alleged injuries are not independent of alleged harms to the Enterprises. Instead, as noted, the Washington Federal Plaintiffs pled that the harms to their shareholder rights flowed from the injury to the Enterprises by the unlawful appointment of the FHFA as conservator. *See, e.g.*, J.A. 166–67 (¶ 222) ("[A]s a result of the Government's legally unsubstantiated imposition of the conservatorships, the Government destroyed the value of the stock held by Plaintiffs . . . ."); J.A. 153 (¶ 185) (alleging that "imposing the conservatorships upon the Companies, under false pretenses and without a statutory basis, causing the value of the Companies' shares to plummet, and destroying all shareholder rights and property interests" constituted a taking); J.A. 117 (¶ 78); J.A. 95 (¶ 16). Because the Washington Federal Plaintiffs' alleged injuries, as pled, depend on an alleged injury to the Enterprises, the Washington Federal Plaintiffs lack standing to assert their substantively derivative claim as a direct takings claim.

We are unpersuaded by the Washington Federal Plaintiffs' arguments in favor of standing. First, the Washington Federal Plaintiffs contend that the extreme circumstances warranting a derivative action are not

present here.  They suggest that a derivative suit requires "the misfeasance and malfeasance of 'faithless directors and managers.'"  Appellants' Opening Br. 31 (quoting *Kamen*, 500 U.S. at 95).  The Washington Federal Plaintiffs argue that, though they believe the government committed malfeasance, they have no reason to believe the directors and managers of the Enterprises did so.  *Id.* at 31–32.  This argument is a red herring.  The Washington Federal Plaintiffs lack standing to assert their direct takings claim because their alleged harms depend on alleged injuries to the Enterprises.  Under federal law, the Washington Federal Plaintiffs may not rest their claim to relief on the legal rights or interests of third parties, i.e., the Enterprises.  *See Kowalski*, 543 U.S. at 129.  The defect with the Washington Federal Plaintiffs' direct takings claim is distinct from the *additional* showing that must be made before a derivative claim on behalf of the Enterprises can be asserted:  that the managements of the Enterprises refused to pursue an action enforcing the Enterprises' rights for reasons other than good-faith business judgment.  *See Kamen*, 500 U.S. at 95–96; *Franchise Tax Bd.*, 493 U.S. at 336.

Second, the Washington Federal Plaintiffs disagree that their alleged harms are dependent on harm to the Enterprises.  The Washington Federal Plaintiffs hypothesize that the Enterprises could have thrived under conservatorship without their shareholders receiving any benefit and, thus, assert that the Enterprises were not themselves actually harmed by the conservatorship decision.  The Washington Federal Plaintiffs also analogize their takings claim to the direct breach-of-contract claims in *Perry II*, 864 F.3d 591.

The Washington Federal Plaintiffs' hypothetical is at odds with every other argument and allegation they have made in this case.  As outlined above, *supra*, at 14–15, the Washington Federal Plaintiffs tie all of their alleged harms to an action they assert was illegally imposed upon and caused great damage to the Enterprises.  For the same

reasons, *Perry II* is inapposite. There, a class of shareholders of the Enterprises asserted that, in adopting the net worth sweep, the FHFA and the Enterprises breached the terms of the shareholders' stock certificates. *Perry II*, 864 F.3d at 603. The D.C. Circuit held that these contract-based claims "are obviously direct." *Id.* at 628. The court explained that the plaintiffs asserted breaches of contractual duties owed to them by the Enterprises by virtue of their stock certificates. *Id.* In stark contrast to the claims in *Perry II*, which were based on a contract to which the shareholders were a party, the Washington Federal Plaintiffs' takings claim attempts to enforce the legal rights and interests of the Enterprises. As we explained in *Fairholme Funds*, "[t]he fact that shareholders possess a property interest in their shares of the Enterprises does not answer the question of whether they are asserting direct or indirect harm to that property right." *Fairholme Funds*, slip op. at 23. The D.C. Circuit's holding in *Perry II* does not mandate that the Washington Federal Plaintiffs' claim is similarly direct.[11]

Third, the Washington Federal Plaintiffs argue that dismissing their claim for lack of standing is an unconstitutional denial of a forum for redress and a clear violation of due process. As noted above, however, whether enforcing HERA as written and interpreted by the Supreme

---

[11]    The Washington Federal Plaintiffs also analogize this case to *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142 (Fed. Cir. 2014), because both cases contain allegations of government coercion. *A & D Auto Sales* is procedurally distinct. There, we considered whether the plaintiffs had stated a plausible takings claim under Rule 12(b)(6) of the Rules of the Court of Federal Claims. Our holding there has no relevance to whether the Washington Federal Plaintiffs have standing to assert their direct takings claim here.

Court, this court, and the D.C. Circuit deprives the Washington Federal Plaintiffs of due process is not a question before us and not a question over which the Claims Court could assert jurisdiction. *See supra*, at 13–14.

Fourth, the Washington Federal Plaintiffs argue that the Claims Court incorrectly assumed that, if a shareholder claim is derivative, the claim cannot also be direct. They reason that the same set of facts can give rise to both direct and derivative claims and can be asserted either directly or derivatively under Delaware law, citing to the dual nature doctrine found in *Gentile* and its progeny. But, as noted above, *Gentile* has been overruled. *See supra*, at 19. Even where two types of harm are alleged, when the alleged harm to the corporation and alleged harm to the shareholder are not independent, the claim is only substantively derivative in nature. *See Brookfield*, 261 A.3d at 1262–63 (overturning *Gentile* and distinguishing between direct and derivative claims).

Finally, the Washington Federal Plaintiffs argue that *Collins* supports holding that they have standing to assert a direct takings claim. We disagree. As we explained in *Fairholme Funds*, the shareholders in *Collins* alleged that HERA's statutory restriction on the President's power to remove the FHFA's Director constituted a separation-of-powers (i.e., Appointments Clause) violation. *Fairholme Funds*, slip op. at 25 (citing *Collins*, 141 S. Ct. at 1778). In concluding that the threshold Article III standing requirements were satisfied in *Collins*, the Supreme Court explained that the unique claims at issue there did not derive from the plaintiffs' status as shareholders. *See Collins*, 141 S. Ct. at 1781. Instead, the separation-of-powers claim asserted a right "shared by everyone in the country." *Id.* By contrast, like the claims in *Fairholme Funds*, the Washington Federal Plaintiffs' claims implicate areas of corporate law that require them to go beyond Article III's minimum standing requirements and establish the right to assert claims on behalf of a third party. *Fairholme Funds*,

slip op. at 25. Only shareholders with a direct, personal interest in a cause of action may bring a direct shareholder action. *Franchise Tax Bd.*, 493 U.S. at 336. And, as the Delaware Supreme Court has made clear, whenever the shareholders' alleged harm is not *independent* of harm to the corporation, shareholders must assert their claim derivatively. *See Brookfield*, 261 A.3d at 1272. *Collins* did not change those legal principles. *See Fairholme Funds*, slip op. at 25.

## III. CONCLUSION

For the reasons discussed above, we affirm the Claims Court's decision dismissing the Washington Federal Plaintiffs' takings and illegal exaction claims.

**AFFIRMED**